**E-FILED**
Monday, 04 March, 2013  04:04:12 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TIMOTHY L. BERTSCHY, AS RECEIVER FOR VCN CELECT.ORG, VCOMM NETWORKS OF CANADA, INC., AND KEYOP EXERCISE, INC. | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 13-cv-_____ ) |
| ANTHONY ROTH, GERARD MCGORIAN, RICHARD D. MILLER, MARK ANDERSON, OPTIMUM INTERACTIVE (USA), LTD., AARON WALKER, and LARRY WILLARD, | ) ) ) ) ) ) |
| Defendants. | ) ) |

<u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

NOW COMES the Plaintiff, TIMOTHY L. BERTSCHY, RECEIVER, by his undersigned attorneys and files this Complaint against the Defendants, ANTHONY ROTH, GERARD McGORIAN, RICHARD D. MILLER, MARK ANDERSON, OPTIMUM INTERACTIVE (USA), LTD., AARON WALKER, and LARRY WILLARD, stating as follows:

A.  INTRODUCTION

1.      The Receiver was appointed as Receiver of the Estate of Timothy J. Roth ("Tim Roth" or "Roth"), KeyOp Exercise, Inc. ("KeyOp"), Mezolink, Inc. ("Mezolink"), VCN Celect.org, LLC ("Celect"), and VComm Networks of Canada ("VComm") by order of this Court on March 31, 2011 (the "Order") in *United States Securities and Exchange Commission, Plaintiff v. Timothy J. Roth, Defendant, et al.*, USDC (CD-IL), Case No. 11-cv-2079, (the "SEC Suit").

2.      The Order provided the Receiver with certain powers, including the following:

C.      To take custody, control and possession of all the funds, property, premises, leases, and other assets of or in the possession or under the direct or indirect control of the Receiver Estates, to manage, control, operate and maintain the Receiver Estates, to use income, earnings, rents and profits of the Receiver Estates, with full power to sue for and collect, recover, receive and take into possession all goods, chattels, rights, credits, monies, effects, lands, books and records of accounts and other papers of the Receiver Estates;

D.      To bring such legal actions based on law or equity in any state, federal, or foreign court as he deems necessary or appropriate in discharging his duties as Receiver;

E.      To pursue, resist and defend all suits, actions, claims and demands that may now be pending or that may be brought by or asserted against the Receiver Estates;

F.      To make such payments and disbursements from the funds so taken into his custody, control and possession or thereafter received, and to incur such expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

G.      To take such action as necessary and appropriate to prevent the dissipation or concealment of any funds or assets or for the preservation of any such funds and assets of the Receiver Estates;

...

I.      To take any action that could be taken by the officers, directors, partners, members, shareholders and trustees of Defendant or Relief Defendants [i.e., Roth, KeyOp, Mezolink, Celect and VComm].

...

3.      Acting pursuant to those powers, the Receiver files this action to recover losses suffered by the Plaintiff entities as a result of the acts, errors, and omissions of the Defendants, jointly and severally.

## B.  PARTIES, JURISDICTION AND VENUE

4.      Plaintiff entities KeyOp, Celect, and VComm are Receiver Estates.  Plaintiff is the Receiver appointed by this Court.

5.      The individual defendants are former directors and/or officers of one or more of the Plaintiff entities.   Defendant Optimum is a corporation which was the sole member of Celect and had authority to control its actions, although corporate formalities were disregarded and Celect was run directly by one or more of Optimum's officers and/or directors.

6.      This action is filed in the Federal Court which established the Receivership.  The action seeks to accomplish the ends for which the Receivership was established.  Accordingly, there is ancillary jurisdiction in this Court and the action is properly filed in this District.  See *Pope v. Louisville, N.A. & C. By. Co.*, 173 U.S. 573, 577, 19 S.Ct. 500, 43 L.Ed. 814 (1899); *Tcherepnin v. Franz*, 485 F.2d. 1251, 1255-56 (7th Cir. 1973); *Cagan v. Intervest Midwest Real Estate Corp.*, 774 F.Supp. 1089, 1093 (N.D. Ill. 1991).

## C.  BACKGROUND

7.      During the period 2003-2011, Tim Roth, a Champaign-Urbana, Illinois based investment adviser, misappropriated approximately $16 million worth of client funds from individuals and certain non-qualified option compensation plans ("Plans") for which he provided investment services and advice (the "Stolen Monies").

8.      This misappropriation was accomplished in part through actions taken by Tim Roth using KeyOp.

9.      The primary purpose of KeyOp was to facilitate an expedited process for the liquidation of mutual fund shares owned by Plans for which Roth provided investment

management services.  These mutual funds were maintained in TD Ameritrade ("TD") accounts established for, and in the name of, a specific plan or individual.  KeyOp was also utilized for the trades of individual customers.

10.     The process for liquidation of Plan mutual funds was supposed to work as follows:  When Roth was advised that an employee (i.e., a "participant" in a Plan) wanted to take his/her compensation, Roth then calculated the amount of mutual funds necessary for the Plan to sell to generate the required amount of compensation.   Roth obtained a letter of authorization from the employer, or in some cases a Plan trustee, allowing the required number of mutual fund shares to be transferred from the Plan's account at TD to KeyOp's account at TD. In some instances, Roth had standing authority to execute the transfers.  Upon receipt from Roth of the completed or signed authorization letter, TD transferred the requested mutual fund shares to the KeyOp account at TD.  Roth then sold the shares while they were in the KeyOp account.   Net monies from the sale, after appropriate withholding, should thereafter have been sent from KeyOp to the employee or individual.

11.     However, from 2003 to 2011, Roth utilized his unrestricted control of KeyOp to misappropriate approximately $16 million worth of client funds through the following scheme:

    a.      Roth improperly utilized blank authorization letters, thereby allowing a Plan's mutual funds    to be improperly transferred to KeyOp's TD account. Roth then used his control of KeyOp to sell the mutual funds and divert the proceeds to his own ends;

    b.      Roth obtained standing authority from several Plans to transfer mutual funds from those Plans.  He used that authority to transfer Plan mutual funds to KeyOp's TD account.  Roth then used his control of KeyOp to sell the mutual funds and divert the proceeds to his own ends or use the shares as collateral for his own trading on margin in the KeyOp account; and/or

c.      Roth improperly utilized blank authorizations signed by      individual clients, and caused client funds to be transferred to KeyOp's TD account.  Roth then used his control of KeyOp to sell the mutual funds     and divert the proceeds to his own ends.

12.      Much of the money obtained through the scheme was ultimately transferred by Tim Roth to the accounts of Celect and VComm, companies in which Tim Roth had an ownership and/or financial interest.  Celect and VComm were start-up companies and were dependent upon receiving these funds to survive.

13.      When the fraud was discovered and stopped in early 2011 through the SEC Suit, KeyOp, Celect, and VComm collapsed, with great loss to KeyOp, Celect, VComm.

14.      These losses would have been prevented, in whole or large part, had the Defendants herein properly exercised their legal responsibilities as members, directors and officers of KeyOp, Celect, and VComm.

## D.  CLAIMS RELATED TO KEYOP

15.      Roth owned KeyOp until 2003, at which time he transferred record ownership to Defendant Richard D. Miller.   Tim Roth's ownership of KeyOp and its custody of client securities presented the possibility of theft of client funds.  Pursuant to securities industry rules, custody of client securities triggered heightened regulatory, supervisory and reporting requirements for Roth and Roth's employer.  Richard D. Miller was the record owner, sole director and officer of KeyOp from 2003 to 2007.

16.      In 2007, record ownership of KeyOp was transferred from Richard D. Miller to third parties.

17.      At all relevant times, KeyOp was insolvent.

<u>Count I - Breach of Fiduciary Duty – KeyOp</u>

18.     Plaintiff hereby incorporates and realleges the above Paragraphs 1-17 as if fully set forth herein.

19.     During the times relevant to this claim, Defendant Richard D. Miller owed a fiduciary duty to KeyOp and to its shareholders by virtue of his position as a director and officer of KeyOp.

20.     Additionally, during times relevant to this claim, Defendant Richard D. Miller owed a "special circumstances" fiduciary duty to creditors of KeyOp due to KeyOp's insolvency.

21.     Said defendant breached his duty to KeyOp and its creditors in one or more of the following ways:

     a.  Allowed Tim Roth complete control of KeyOp;

     b.  Failed to monitor, supervise, review, or oversee the activities of Tim Roth;

     c.  Failed to monitor, supervise, review, or oversee activity in the KeyOp account at TD;

     d.  Failed to produce and maintain proper financial statements for KeyOp;

     e.  Failed to regularly review the financial data of KeyOp;

     f.  Failed to financially audit KeyOp;

     g.  Failed to maintain financial records such as would be necessary to perform a financial audit of KeyOp;

     h.  Allowed corporate funds to be used for non-corporate purposes;

     i.  Failed to follow corporate formalities;

     j.  Failed to keep accurate corporate books and records for KeyOp;

k. After the company became insolvent, failed to recognize the company was insolvent and to take reasonable acts or to make reasonable decisions for the protection of KeyOp, its business creditors, and other affected parties;

l. Operated KeyOp without following corporate formalities and standard operating procedures;

m. Failed to address conflicts of interest;

n. Failed to reasonably inform himself of material facts necessary to make independent business decisions;

o. Failed to hold director meetings;

p. Failed to discover and/or investigate transfers from KeyOp's account at TD to Mezolink, Celect, VComm, and/or other Roth related entities; and/or

q. Allowed KeyOp to be funded illegitimately through the receipt of the Stolen Monies.

22. These breaches of fiduciary duty made it impossible for KeyOp to operate successfully and survive. Its actual and potential enterprise value was thereby lost.

23. Additionally, these breaches resulted in KeyOp receiving Stolen Monies and becoming substantially indebted to third parties for the repayment of such funds.

24. KeyOp was improperly and inadequately capitalized and artificially prolonged and continued in business while insolvent to the detriment of KeyOp and its creditors. Defendant Richard D. Miller owed a "special circumstances" fiduciary duty to creditors of KeyOp because of its insolvency.

25. Further, by reason of the foregoing acts and omissions of the Defendant, the Receiver, acting on behalf of KeyOp, has been forced to incur legal and related expenses to address such claims and to marshal the assets of KeyOp.

7

WHEREFORE, the Receiver respectfully prays this Court to enter judgment on his behalf and against Richard D. Miller, in the amount of $16 million, to award the Receiver his costs of suit and attorney fees, and to grant such other and further relief as the Court deems proper.

<u>Count II - Negligence - KeyOp</u>

26.     Plaintiff hereby incorporates and realleges the above Paragraphs 1-17 as if fully set forth herein.

27.     Defendant Richard D. Miller had a duty of ordinary care to exercise reasonable supervision over Tim Roth with regard to his actions in respect to KeyOp.

28.     The Defendant's acts and omissions described in Paragraph 21 above each constitute a breach of such duty.

29.     By reason of theses breaches, the actual and potential enterprise value of KeyOp was lost, KeyOp became substantially indebted to third parties, and the Receiver, acting on behalf of KeyOp, has been forced to incur legal and related expenses to address such claims and to marshal the assets of KeyOp.

WHEREFORE, the Receiver respectfully prays this Court to enter judgment on his behalf and against Richard D. Miller, in the amount of $16 million, to award the Receiver his costs of suit and attorney fees, and to grant such other and further relief as the Court deems proper.

E.  CLAIMS RELATED TO CELECT

30.     The Receiver repeats and realleges Paragraphs 1 – 14.

31.     At all relevant times, Celect was a California limited liability company with its principal place of business in Southern California and/or Evanston, Illinois.  It conducted business primarily in developing and maintaining websites for third parties.

32.     At all relevant times, Optimum was the sole and managing member of Celect.  On information and belief, the bylaws for Celect grant Optimum all the rights and powers of a manager, including the exclusive authority to control the operations and affairs and make all decisions regarding the business of Celect.   However, material corporate formalities were disregarded, and Tim Roth and the individual Defendants, Gerard McGorian, Anthony Roth, Richard D. Miller and Mark Anderson, controlled Celect.

33.     During all relevant times, Gerard McGorian, Anthony Roth, Richard D. Miller, and Mark Anderson served as directors and/or officers of Optimum and/or Celect.

34.     At all relevant times, Celect was insolvent.

### Count III- Breach of Fiduciary Duty - Celect

35.     The Receiver repeats and realleges Paragraphs 30 - 34.

36.     By virtue of the foregoing, Defendants Optimum, Gerard McGorian, Anthony Roth, Richard D. Miller, and Mark Anderson owed fiduciary duties to Celect, its members, and its business creditors.

37.     In disregard of their said fiduciary duties, Optimum, Gerard McGorian, Anthony Roth, Richard D. Miller, and Mark Anderson:

    a.  Failed to monitor, supervise, review, or oversee the business activities of Celect in a reasonable fashion;

    b.  Failed to establish a reasonable financial model for Celect;

    c.  Failed to develop a reasonable plan for a sustainable financial structure for Celect;

    d.  Failed to provide for a continuing source of reliable and legitimate working capital for Celect;

    e.  Allowed Celect to go into substantial debt without a reasonable plan for repayment;

    f.   Failed to provide for and maintain proper financial statements for Celect;

    g.   Failed to monitor the ongoing operational performance of Celect;

    h.   Failed to financially audit Celect;

    i.   Failed to maintain financial records such as would be necessary to perform a financial audit of Celect;

    j.   Failed to create a business plan for Celect which was reasonable;

    k.   Failed to follow corporate formalities and standard operating procedures;

    l.   Failed to make expected inquiries into the sources of Celect's funding;

    m.   When Celect was insolvent, failed to take reasonable steps or to make reasonable decisions for the protection of Celect, its creditors, and all interested parties;

    n.   Paid unreasonable salaries to officers and employees;

    o.   Failed to reasonably inform themselves of material facts necessary to make proper business decisions;

    p.   Failed to adequately staff Celect in respect to its finances; and/or

    t.   Allowed Celect to be funded illegitimately through Stolen Monies.

38.    These breaches of fiduciary duty made it impossible for Celect to operate successfully and survive.  Its actual and potential enterprise value was thereby lost.

39.    Additionally, these breaches resulted in Celect receiving Stolen Monies and becoming substantially indebted to third parties for the repayment of such funds.

40.    Celect was improperly and inadequately capitalized and artificially prolonged and continued in business while insolvent to the detriment of Celect and its creditors.  These Defendants owed a "special circumstances" fiduciary duty to creditors of Celect because of its insolvency.

41.     Further, by reason of the foregoing acts and omissions of these Defendants, the Receiver, acting on behalf of Celect, has been forced to incur legal and related expenses to address such claims and to marshal the assets of Celect.

WHEREFORE, the Receiver respectfully prays this Court to enter judgment on his behalf and against Optimum, Gerard McGorian, Anthony Roth, Richard D. Miller, and Mark Anderson, jointly and severally, in the amount of $16 million, to award the Receiver his costs of suit and attorney fees, and to grant such other and further relief as the Court deems proper.

<u>Count IV- Negligence- Celect</u>

42.     The Receiver hereby incorporates and realleges the above Paragraphs 30 – 34.

43.     Optimum, Gerard McGorian, Anthony Roth, Richard D. Miller, and Mark Anderson, had a duty of ordinary care to exercise reasonable supervision over Celect.

44.     The Defendants' acts and omissions described in Paragraphs 37 each constitute a breach of such duty.

45.     By reason of theses breaches, the actual and potential enterprise value of Celect was lost, Celect became substantially indebted to third parties, and the Receiver, acting on behalf of Celect, has been forced to incur legal and related expenses to address such claims and to marshal the assets of Celect.

WHEREFORE, the Receiver respectfully prays this Court to enter judgment on his behalf and against Optimum, Gerard McGorian, Anthony Roth, Richard D. Miller, and Mark Anderson, jointly and severally, in the amount of $16 million, to award the Receiver his costs of suit, and to grant such other and further relief as the Court deems proper.

## F.  CLAIMS RELATED TO VCOMM

46.     The Receiver repeats and realleges Paragraphs 1–14.

47.     At all relevant times, VComm was a Canadian corporation with its principal place of business in Toronto, Ontario, Canada.  It conducted business in the e-commerce field and programming work for Celect.

48.     At all relevant times, Anthony Roth, Gerard McGorian, Larry Willard, and Aaron Walker served as directors and/or officers of VComm.

49.     At all relevant times, VComm was insolvent.

### Count V - Breach of Fiduciary Duty - VComm

50.     The Receiver repeats and realleges Paragraphs 46 – 49.

51.     By virtue of their positions as directors and/or officers, Defendants Gerard McGorian, Anthony Roth, Larry Willard, and Aaron Walker owed fiduciary duties to VComm, its shareholders, and its business creditors.

52.     In disregard of their said fiduciary duties, Anthony Roth, Gerard McGorian, Larry Willard, and Aaron Walker:

  a.  Failed to establish a reasonable financial model for VComm;

  b.  Failed to develop a reasonable plan for a sustainable financial structure for VComm;

  c.  Failed to provide for a continuing source of reliable and legitimate working capital for VComm;

  d.  Failed to provide for and maintain proper financial statements for VComm;

  e.  Failed to regularly review the financial data of VComm;

  f.  Failed to monitor the ongoing business performance of VComm;

  g.  Failed to financially audit VComm;

h.  Failed to maintain financial records such as would be necessary to perform a financial audit of VComm;

i.  Failed to create a business plan for VComm which was reasonable;

j.  Failed to follow corporate formalities and standard operating procedures;

k.  Failed to make expected inquiries into the sources of VComm's funding;

l.  Failed to keep accurate corporate books and records;

m.  When VComm was insolvent, failed to take reasonable steps or to make reasonable decisions for the protection of VComm, its creditors, and all interested parties; and/or

n.  Allowed VComm to be funded illegitimately through Stolen Monies.

53.    These breaches of fiduciary duty made it impossible for VComm to operate successfully and survive.  Its actual and potential enterprise value was thereby lost.

54.    Additionally, these breaches resulted in VComm receiving Stolen Monies and becoming substantially indebted to third parties for the repayment of such funds.

55.    VComm was improperly and inadequately capitalized and artificially prolonged and continued in business while insolvent to the detriment of VComm and its creditors.  These Defendants owed a "special circumstances" fiduciary duty to creditors of VComm because of its insolvency.

56.    Further, by reason of the foregoing acts and omissions of these Defendants, the Receiver, acting on behalf of VComm, has been forced to incur legal and related expenses to address such claims and to marshal the assets of VComm.

WHEREFORE, the Receiver respectfully prays this Court to enter judgment on his behalf and against Anthony Roth, Gerard McGorian, Aaron Walker, and Larry Willard, jointly and severally, in the amount of $16 million, to award the Receiver his costs of suit and attorney fees, and to grant such other and further relief as the Court deems proper.

### Count VI – Negligence- VComm

57.     Plaintiff hereby incorporates and realleges the above Paragraphs 46 – 49.

58.     During times relevant to this claim, Defendants Anthony Roth, Gerard McGorian, Aaron Walker, and Larry Willard had a duty of ordinary care to exercise reasonable supervision over VComm.

59.     The Defendants' acts and omissions described in Paragraph 52 each constitute a breach of such duty.

60.     By reason of theses breaches, the actual and potential enterprise value of VComm was lost, VComm became substantially indebted to third parties, and the Receiver, acting on behalf of VComm, has been forced to incur legal and related expenses to address such claims and to marshal the assets of VComm.

WHEREFORE, the Receiver respectfully prays this Court to enter judgment on his behalf and against Anthony Roth, Gerard McGorian, Aaron Walker, and Larry Willard, jointly and severally, in the amount of $16 million, to award the Receiver his costs of suit and attorney fees, and to grant such other and further relief as the Court deems proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS

Timothy L. Bertschy, Receiver

By:_____s/Gregory J. Rastatter_____
Timothy L. Bertschy – ARDC #199931 (lead)
Gregory J. Rastatter – ARDC #6280965
Andrew J. Keyt – ARDC #627778
Brian M. Smith – ARDC # 6293822

14

Stacy E. Crabtree – ARDC #6304685
Patrick E. Poston – ARDC #6306753
HEYL, ROYSTER, VOELKER & ALLEN
124 SW Adams Street, Suite 600
Peoria, Illinois 61602
Telephone: 309.676.0400
Facsimile: 309.676.3374
tbertschy@heylroyster.com
grastatter@heylroyster.com
akeyt@heylroyster.com
bsmith@heylroyster.com
scrabtree@heylroyster.com
pposton@heylroyster.com

20336333_1